IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PENNYMAC LOAN SERVICES, LLC,<br><br>*Plaintiff,*<br><br>vs.<br><br>RENE TORRES, UNITED STATES OF AMERICA, ON BEHALF OF DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; AND CASTLE CREDIT CO HOLDINGS, LLC,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 5:24-CV-01480-DAE |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge David Alan Ezra:**

This Report and Recommendation concerns the Motion for Default Judgment filed by Plaintiff PennyMac Loan Services, LLC (hereinafter "PennyMac"). *See* Dkt. No. 25. PennyMac seeks a default judgment against Defendants Rene Torres and Castle Credit Co. Holdings, LLC. The District Judge referred the motion to the Magistrate Judge, pursuant to Federal Rule of Civil Procedure 72 and Rules CV-72 and 1 to Appendix C of the Local Rules for the United States District Court for the Western District of Texas. *See* Text Order dated January 7, 2026. Plaintiff invokes federal diversity and federal question jurisdiction. *See* Dkt. No. 1 at 2-3 (pleading diversity under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. §2410). Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the Court recommends that the Motion for Default Judgment, Dkt. No. 25, be **GRANTED** as provided herein.

**Factual and Procedural Background**

The Complaint alleges the following facts: Defendant Rene Torres made, executed, and delivered on October 20, 2021, to Pilgrim Mortgage LLC a promissory note by which she promised to pay Pilgrim Mortgage $186,558.00 plus interest and other costs. Dkt. No. 1 at 3 (citing Dkt. No. 1-1 at 2-4 (Note)). Pilgrim Mortgage then indorsed the Note and assigned it to PennyMac Loan Services, LLC. *Id*. Also on October 20, 2021, Torres executed a deed of trust (Security Instrument) to secure the Note with real property at the mailing address 211 Moonstone Drive, San Antonio, TX 78223 (the "Property"). *Id*. "By executing the Security Instrument, Torres granted a lien on and recourse to the Property a breach thereunder." *Id*. (citing Dkt. No. 1-1 at 6-19 (Security Instrument)). "PennyMac is the record assignee of the Security Instrument under a certain Corporate Assignment of Deed of Trust . . . ." *Id*. (citing Dkt. No. 1-1 at 21-22 (Assignment)).

The obligation established by the Note and Security Instrument (the "Loan") "was modified by virtue of a Loan Modification Agreement filed in the Bexar County Real Property Records on May 15, 2023 (Instrument number: 20230085774)." *Id*. at 4 (citing Dkt. No. 1-1 at 24-34 (Loan Modification Agreement)). Torres later failed and refused to pay amounts that came due under the loan agreements, despite PennyMac's repeated demands for payment. *Id*. PennyMac thereafter "caused to be provided to Torres proper notice of the default described [in the Complaint] and its intent to accelerate the indebtedness." *Id*. (citing Dkt. No. 1-1 at 36-41 (Notice of Default)). "Torres' continued breach under the Loan has directly and proximately caused damages to PennyMac in that amounts due to PennyMac remain unpaid, and in that PennyMac is incurring fees and expenses to enforce its rights under the Loan and to protect its security interest in the Property." *Id*.

PennyMac further states in its Complaint that Torres has not cured the default described in the Notice of Default, and PennyMac therefore has a right to require immediate payment of all sums due to it under the terms of the Security Instrument. *Id*. PennyMac asserted in its Complaint that the unpaid principal balance due and payable under the Loan and secured under the Security Instrument as of the filing of its filing was $132,069.83, exclusive of interest, late fees, costs, advances, and attorneys' fees and costs. *Id*.

PennyMac sued on December 31, 2024, alleging Breach of Contract and seeking judicial foreclosure against Torres. *See generally id*. It also named as Defendants the United States on behalf of the Secretary of Housing and Urban Development ("HUD") and Castle Credit Co. Holdings, LLC ("Castle Credit Co.") on the grounds that each claims an interest in the real property that is the subject of the lawsuit. *Id*. at 1-2 (stating these Defendants' interest and citing attached exhibits). With respect to Torres, the Complaint states the following:

> For consideration, Torres promised to repay the Loan in installments. Torres breached such promise to the detriment of PennyMac. Thus, and in accordance with Texas Rule of Civil Procedure 735, PennyMac is entitled to a judgment quantifying the amount chargeable to the Property in respect of the Loan (including, principal, pre-judgment interest, reasonable attorneys' fees and expenses, advances, costs, and post-judgment interest), and judicial foreclosure upon the lien against the Property securing such amount.

Dkt. No. 1 at 4-5.

PennyMac provides in its Complaint that it "[b]y virtue of filing this Complaint, PennyMac hereby accelerates all sums due under the Loan and demands payment in full of said amount," and that "[a]ll conditions precedent to the relief requests herein by PennnyMac have been performed or satisfied." *Id*. at 5.

The Complaint asks that the Court "quantify the amount chargeable to the Property in respect of the Loan (including, principal, pre-judgment interest, reasonable attorney's fees and

expenses, advances, costs, and post-judgment interest) and grant foreclosure upon the lien securing such amount as remedy to PennyMac for Torres' breach of contract as herein alleged, deem all junior lienholders', if any, interest in the Property inferior to the superior interest of PennyMac, and for all other relief Court deems appropriate." *Id*. at 6. Furthermore, the Complaint requests attorneys' fees to the extent permitted under Texas Rule of Civil Procedure 735, stating that the terms of the Loan provide that PennyMac may be awarded all expenses incurred in pursuing remedies provided for under the terms of the Loan. *Id*. at 5.

More than eight months after filing suit, PennyMac filed proof of service as to all three Defendants. *See* Dkt. Nos. 8, 9, 10. Review of the proof of service as to each Defendant reflects that the United States, on behalf of HUD, was purportedly timely served on February 12, 2025, and that defendants Rene Torres and Castle Credit Co. were timely served on February 18, 2025. *See id*. (all sources); *see also* Fed. R. Civ. P. 4(m) (providing that service must be completed within 90 days of filing the complaint). The District Judge later noted that "it is not clear that Defendant United States of America was properly served in accordance with [FRCP] 4(i)," Dkt. No. 11 at 1, and ordered PennyMac "to either provide a status update to this Court or, alternatively, move for default judgment against Defendants in accordance with Rule 55 of the Federal Rules of Civil Procedure, within fourteen days of the date of this Order." *Id*. at 2. PennyMac responded with a status update, Dkt. No. 12, and later filed new proof of service reflecting that Defendant United States was served on September 18, 2025. Dkt. No. 18. The United States has filed an answer. *See* Dkt. No. 19.

PennyMac moved for a Clerk's Entry of Default against Rene Torres and Castle Credit Co. on September 12, 2025. Dkt. No. 14. The Clerk entered a default against both defendants on that same day. Dkt. No. 16. Several months later, the District Judge directed PennyMac to move

for a default judgment against Torres and Castle Credit Co. on or before January 3, 2026, Dkt. No. 20, and PennyMac did so, slightly out-of-time, on January 6, 2026. Dkt. No. 25.

The Motion for Default Judgment provides that Defendants Torres and Castle Credit Co. have not answered or otherwise defended this matter despite having been served; that a Clerk's Enty of Default has been entered; that neither are infants or incompetent; that neither is eligible for relief or entitled to protection under the Servicemember Civil Relief Act, 50 U.S.C. App. 521; and that a hearing is not necessary to determine damages in view of Exhibit B to the Motion for Default Judgment, a statement of the debt which reflects that Torres owed $160,584.56 in damages as of January 30, 2026. *See generally* Dkt. No. 25; *see also* Dkt. No. 27 (proposed default judgment proposing the specific shape of relief). This amount due consists of $132,069.83 in unpaid principal and the remainder in unpaid interest and other costs due under the loan agreements, which amount continues to accrue interest according to the Motion "per diem at $23.97 each day after January 30, 2026." Dkt. No. 25 at 2; *See* Dkt. No. 25-2 at 47. The Motion does not seek entry of default judgment against Defendant United States, on behalf of the HUD, in accordance with a separate Consent Order entered by the Court on December 29, 2025. *Id.*; *see also* Dkt. No. 23 (Consent Order).

**Analysis**

**Default.** The record reflects that PennyMac served a copy of the Summons and Complaint on Defendant Torres on February 18, 2025, by delivering it to Torres' usual place of abode and leaving it with Veronica Torres, her sister, a person over 18 years old or above and who resides there, Dkt. No. 10, pursuant to Fed. R. Civ. P. 4(e)(2)(B). The record further reflects that PennyMac completed service on Castle Credit Co. on February 18, 2025, by leaving a copy of the Summons and Complaint with Abby Petrone, "LEGAL MANAGER, an officer or agent of

CASTLE CREDIT CO. HOLDINGS, LLC," Dkt. No. 9, pursuant to Fed. R. Civ. P. 4(h)(1)(B). Defendants Torres and Castle Credit Co. failed to answer or otherwise defend against PennyMac's claim, as demonstrated by PennyMac's Motion for Clerk's Entry of Default*, see* Dkt. No. 14, and the subsequent Clerk's Entry of Default, *see* Dkt. No 16. The rules provide that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Accordingly, the Clerk properly entered default in this case.

**Default Judgment.** Once a default has been entered and upon a party's motion, a court may enter a default judgment. Fed. R. Civ. P. 55(b); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). "[A] party," however, "is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quotation marks and citation omitted). Rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) (footnote omitted). When considering whether such a basis is presented, a court accepts as true the complaint's well-pleaded factual allegations—except regarding damages—and must determine whether those pleaded facts state a claim upon which relief may be granted. *See id.*; *see also United States ex rel. M-Co. Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

PennyMac is entitled to a default judgment because the facts alleged in the Complaint state a claim upon which relief may be granted. Specifically, PennyMac alleges (or has attached loan documents demonstrating) that: (1) it is the current mortgagee of the property; (2) Defendant Torres owes a debt and the debt is secured by a home-equity lien permitted by

Article XVI, § 50(a)(6) of the Texas Constitution; (3) Defendant Torres is in default under the Note and Security Instrument; and (4) Defendant Torres was properly served with notice of the default and acceleration, *see* Dkt. No. 1-1 at 36-41, and was provided an opportunity to cure the default in accordance with § 51.002(d) of the Texas Property Code, *id*. *See Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740-42 (S.D. Tex. 2013), *aff'd*, 583 F. App'x 306 (5th Cir. 2014) (citing Tex. Prop. Code § 51.002). Included with PennyMac's Motion for Entry of Default Judgment is an affidavit from its counsel explaining that neither Torres nor Castle Credit Co. are infants, incompetent, or are in the military service such that they would be entitled to protection or relief under the Servicemembers Civil Relief Act, 50 U.S.C. § 3931(b)(1)(A). *See* Dkt. No. 25-1. A default judgment is therefore appropriate, and PennyMac should be permitted to enforce its lien against the property through judicial foreclosure in accordance with the terms of Deed of Trust and Texas Rule of Civil Procedure § 309. *See Douglas v. NCNB Tex. Nat'l Bank*, 979 F.2d 1128, 1130 (5th Cir. 1992) ("Under Texas law, lenders have a substantive right to elect judicial or nonjudicial foreclosure in the event of a default.").

PennyMac has also shown itself entitled to judgment on the breach-of-contract claims asserted against Defendant Torres. "In Texas, '[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted) (alteration in original). PennyMac's complaint and attached documents establish the existence of a valid contract, PennyMac's performance, breach by Defendant Torres, and damages sustained as a result of that breach. *See* Dkt. No. 1.

PennyMac should also be permitted, after allowing all just and lawful credits and offsets as of the date of judgment, to recover the principal amount alleged in the Complaint as well as additional sums that became due through January 30, 2026, which totaled $160,584.56 (including interest, escrow costs, and other expenses due under the loan agreements), and continued to accrue at $23.97 each day after January 30, 2026, in accordance with the allegations and requests for relief within the Complaint. Dkt. No. 25 at 2; *see also* Dkt. No. 25-2 at 47.

As to Castle Credit Co., PennyMac has shown itself entitled to a default judgment establishing that Castle Credit Co's interest in the property, to the extent it has any such interest, is inferior to the superior interest of PennyMac. *See* Dkt. No. 1 at 2 (citing Dkt. No. 1-1 at 52-55); *see also* Dkt. No. 27 at 2. Importantly, however, PennyMac has not shown itself entitled to any such judgment against the other allegedly junior lienholder, the United States, which has answered in this case and against which the Clerk has entered no default. PennyMac is furthermore not entitled to any monetary recovery against Castle Credit Co. Dkt. No. 1 at 2 ("Plaintiff is not seeking monetary relief from [Castle Credit Co.]").

Importantly, the District Judge entered a Consent Order memorializing an agreement between the parties reflecting that the HUD, through counsel for the United States, "does not oppose the Court entering judgment in favor of Plaintiff and ordering the Subject Property sold at a public sale." Dkt. No. 23 at 1. The parties further agreed that the Consent Order "does not affect Plaintiff's ability to pursue collection on the mortgage, deed of trust or federal security deed as provided by law and said instruments shall remain enforceable against any excess funds arising from any foreclosure sale of the Subject Property ordered pursuant to Plaintiff's Complaint." *Id*. That Order further provided the following:

> THEREFORE, it is HEREBY ORDERED that the relief sought by Plaintiff in its Complaint as against the Secretary of Housing and Urban Development is hereby

> granted to the extent set forth above. Plaintiff shall not receive any award or judgment for attorneys' fees or other monetary damages against the Secretary of Housing and Urban Development.
>
> It is FURTHER ORDERED that Plaintiff shall provide the Secretary of Housing and Urban Development, through counsel for the United States of America, with notice and copies of all documents in this action, including correspondence and pre- and post-judgment pleadings, whether presented to the judge or to the clerk of court. In addition, Plaintiff shall provide to the Secretary of Housing and Urban Development, in the same manner set forth above, notice of any excess proceeds and notice of any agreement between debtor and Plaintiff which delays judgment or judicial sale of the property.

*Id*. at 2. Accordingly, the United States is not opposed to allowing PennyMac to enforce the lien and recover on its claims for relief, although no award of attorney's fees or other damages shall be recovered by PennyMac against the United States. The judgment should otherwise be limited as provided in the Consent Order. *See generally* Dkt. No. 23.

PennyMac can be awarded its costs, provided it timely files a bill of costs using the form required by the Clerk of the Court and supported by appropriate documentation. Although PennyMac could more explicitly state so in its Motion for Default Judgment, it also appears to be moving for attorneys' fees. *See* Dkt. No. 25 (asking for damages of "$160,584.56, which continues to accrue a per diem at $23.97 each day after January 30, 2026"); Dkt. No. 27 (a proposed order of default judgment asking for damages of "$160,584.56 which shall include principal in the amount of $132,069.83, interest in the amount of 6.625% per annum, as a daily interest amount of $23.97 each day after January 30, 2026, and all other fees, charges, and costs, *including attorneys fees*[,] in the amount of $28,514.73.") (emphasis added); *see also* Dkt. No. 25-2 at 47 (itemizing the amounts due under the loan agreement).

Thus, the attorneys' fees appear to be folded in the amount of damages requested, and PennyMac has submitted several documents demonstrating how the attorneys' fees fit into the overall damage award. *Compare* Dkt. No. 25-2 at 47 (itemizing the $160,584.56 balance with a

balance of $8,514.76 under "Escrow Advance") *with* Dkt. No. 29-1 (itemizing the balance for "Escrow Advance" and the specific amounts of attorneys' fees charged thereunder). Indeed, PennyMac requested attorneys' fees in the Complaint pursuant to a provision in the underlying loan agreement. Dkt. No. 1 at 5. Under general Texas contract law, a party may recover attorneys' fees when such recovery is provided by statute or by contract. *In re Velazquez,* 660 F.3d 893, 895-96 (5th Cir. 2011). Attorney's fees, whether recovered under a contract or statute, must be necessary and reasonable. *See, e.g.*, *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019). The Court finds that PennyMac has demonstrated that it requests a necessary and reasonable amount of attorneys' fees, *see* Dkt. No. 29, and has shown itself entitled to, and should be awarded, reasonable attorneys' fees. Any such fees and costs, however, may only be recovered against the property after a foreclosure sale. *See Huston*, 988 F. Supp. 2d at 741. And such fees and costs cannot be recovered against the United States, nor against Castle Credit Co., as provided above.

**Conclusion and Recommendation**

For the reasons discussed above, it is recommended that the Motion for Default Judgment, Dkt. No. 25, be **GRANTED** as discussed herein.

Specifically, it is recommended that PennyMac be granted a judgment declaring PennyMac entitled to enforce its lien against the property through judicial foreclosure of the property in accordance with the terms of Deed of Trust and Texas Rule of Civil Procedure § 309.

As provided above, PennyMac should also be granted a judgment itself establishing that Castle Credit Co's interest in the property, to the extent it has any such interest, is inferior to the superior interest of PennyMac. PennyMac, however, does not seek, and should not be awarded, monetary relief against Castle Credit Co.

PennyMac should moreover recover $160,584.56, which shall include principal in the amount of $132,069.83 and costs and expenses of $28,514.73 (which includes a reasonable and necessary award of attorneys' fees) owing and due under the loan agreements through January 30, 2026, as well as interest that continues to accrue after January 30, 2026, as provided herein. Post-judgment interest shall continue to accrue after the date of judgement at the federal post-judgment interest rate as established by 28 U.S. Code § 1961 or the highest rate allowed by law. Plaintiff may add post-judgment interest and additional amounts owed that are incident to the foreclosure sale of the Property as allowed under the loan agreements and applicable law.

As provided above, attorney's fees and other monetary damages may not be recovered against the United States, although the lack of any judgment against that Defendant does not preclude PennyMac from enforcing its lien against Defendants Torres and Castle Credit Co. and recovering monetary damages and attorneys' fees against Defendant Torres. The judgment should otherwise be limited as provided in the Consent Order. *See generally* Dkt. No. 23.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing

objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

**SIGNED** this 29th day of July, 2026.

**RICHARD B. FARRER**
**UNITED STATES MAGISTRATE JUDGE**